# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

| | | |
|---|---|---|
| Mills K. Allison and Caitlin M. Barca, | ) | |
| a.k.a. Caitlin Barca Allison, | ) | |
| | ) | |
| Plaintiffs, | ) | C.A. No.: 2:17-cv-1727-PMD |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| McCabe, Trotter & Beverly, P.C., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This matter is before the Court on Defendant McCabe, Trotter & Beverly, P.C.'s motion to quash (ECF No. 13), Plaintiffs Mills K. Allison and Caitlin M. Barca's motion to compel (ECF No. 12), and Defendant's motion to compel (ECF No. 14). For the reasons stated herein, the Court denies Defendant's motion to quash for lack of standing. However, the Court quashes the subpoena to Gold Crown and orders Defendant to produce the requested documents. The Court grants in part and denies in part both motions to compel.

## BACKGROUND

Plaintiffs purchased a house that is subject to the Charleston National Community Association, a homeowners' association (HOA) that charges annual assessments. The HOA employs Defendant to represent it in collections of assessments. Plaintiffs allege that Defendant violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1601, by attempting to collect, and actually collecting, amounts not currently due on homeowners' association accounts. Plaintiffs also allege that Defendant made misrepresentations in violation of the South Carolina Unfair Trade Practices Act, S.C. Code Ann. § 39–5–10, *et seq.* Plaintiffs intend to bring a class action

on behalf of themselves and other homeowners or community association members whose debts were referred to Defendant for collection.

## DISCUSSION

### I. Defendant's Motion to Quash

Gold Crown Management serves as the managing agent for the HOA. On August 2, Plaintiffs served Gold Crown with a subpoena asking for various documents related to Gold Crown's interactions with Defendant between June 14, 2016, and June 14, 2017 (approximately 6 months before and after Plaintiffs moved into their home in Charleston National). According to Plaintiffs, Gold Crown did not object to the subpoena. However, Defendant moved to quash the subpoena on September 18. Plaintiff responded on October 2, and Defendant replied on October 10.

The Court must first determine if Defendant has standing to challenge a subpoena served on Gold Crown. "Ordinarily, a party does not have standing to challenge a subpoena issued to a nonparty unless the party claims some personal right or privilege in the information sought by the subpoena." *United States v. Idema*, 118 F. App'x. 740, 744 (4th Cir. 2005) (per curiam). Thus, Defendant must have some personal right or privilege in order to challenge the subpoena served upon Gold Crown. If Defendant does have standing, the court "must quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter, if no exception or waiver applies;" or "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A). As the party objecting to discovery, Defendant bears the burden of establishing that production of the subpoenaed documents should not be permitted. *HD Sherer LLC v. Nat. Molecular Testing Corp.*, 292 F.R.D. 305, 308 (D.S.C. 2013).

Defendant claims the requested documents are attorney work product and subject to attorney-client privilege, two protections that can provide standing to challenge a subpoena issued to a nonparty. Though Defendant does not have a representation agreement with Gold Crown, Defendant claims these protections apply because Defendant represents homeowners' associations in collections and Gold Crown is the agent of those associations. The Court assumes without deciding that the homeowners' associations' attorney-client relationships with Defendant extends protections related to those relationships to Gold Crown.

The Court finds that the subpoenaed documents are not attorney work product under Rule 26(b)(3). That rule protects against discovery of documents that are prepared in anticipation of trial if they contain "mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed. R. Civ. P. 26(b)(3). The Fourth Circuit has recognized that this protection extends to subsequent litigation. *Duplan Corp. v. Moulinage et Retorderie de Chavanoz*, 509 F.2d 730, 732–33 (4th Cir. 1974); *Washington v. Follin*, 4:14-cv-416-RBH-KDW, 2016 WL 1614166, at *13 (D.S.C. Apr. 22, 2016). Thus, if Defendant prepared work product for Gold Crown, it would be protected (subject to limitations in the Rules) in the current matter. However, none of the documents requested appear to be of a type that would include Defendant's mental impressions, conclusions, opinions, or legal theories regarding Defendant's pursuit of collections (assuming those collections progressed to litigation). Rather, the subpoena asks for collections requests from Gold Crown to Defendant (Mot. Quash, Ex. 4, Pls.' Subpoena Gold Crown, ECF No. 13-4, at 5, item 1); invoices between Gold Crown and Defendant (items 2 and 5); attorney employment agreements between Gold Crown, as a representative of homeowners' associations, and Defendant (item 3); a list of payments by homeowners' associations to Defendant (item 4); statements about how Defendant

has disbursed funds received through collections (item 6); collections requests Gold Crown initiated with Defendant (item 7); and documents that show amounts collected by Defendant in response to Gold Crown's collection requests (item 8).  Because none of these documents should contain an attorney's mental impressions, they are not attorney work product.  Consequently, attorney work-product protection does not provide a basis for standing to challenge the subpoena.

The Court finds that attorney-client privilege does not provide a basis for standing either. "Because the attorney-client privilege exists for the benefit of the client, the client holds the privilege."  *In re Grand Jury Proceedings*, 401 F.3d 247, 251 (4th Cir. 2005).  Since Defendant was the attorney, and not the client, with respect to the documents subpoenaed from Gold Crown, Defendant cannot assert attorney-client privilege.  Thus, Defendant has not established any privilege or protection that can be used to assert standing to quash the subpoena served on Gold Crown.

However, the Court has an obligation to limit discovery when it can be obtained from a more convenient source.  *See* Fed. R. Civ. P. 26(b)(2)(C) ("[T]he court must limit the frequency or extent of discovery otherwise allowed by these rules . . . if it determines that the discovery sought . . . can be obtained from some other source that is more convenient, less burdensome, or less expensive.").  Since every item Plaintiffs seek from Gold Crown is a document that involved Defendant, Defendant should provide these documents to the extent that it can.  *See HD Sherer LLC*, 292 F.R.D. at 309 (quashing subpoenas issued to defendant's customers and ordering defendant to produce the requested documents, which were likely to be in defendant's possession).  Plaintiffs may renew their subpoena if Defendant cannot provide the requested

documents. Thus, Plaintiffs' subpoena to Gold Crown is quashed and Defendant is ordered to provide the requested documents.

## II. Motions to Compel

Both parties have filed motions to compel. Federal Rule of Civil Procedure 26(b)(1) states in relevant part, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." "Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). The Fourth Circuit has instructed that "[d]iscovery under the Federal Rules of Civil Procedure is broad in scope and freely permitted." *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 402 (4th Cir. 2003). Both parties' motions include requests to respond to interrogatories. Interrogatories must be answered fully, unless the interrogatory is objected to. Fed. R. Civ. P. 33(b)(3). Federal Rule of Civil Procedure 33(b)(4) states that the "grounds for objecting to an interrogatory must be stated with specificity" and "[a]ny ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure." "'Mere recitation of the familiar litany that an interrogatory or a document production request is "overly broad, burdensome, oppressive, and irrelevant"' does not suffice as a specific objection." *Mainstreet Collection, Inc. v. Kirkland's, Inc.*, 270 F.R.D. 238, 240 (E.D.N.C. 2010) (quoting *Momah v. Albert Einstein Med. Ctr.*, 164 F.R.D. 412, 417 (E.D. Pa. 1996). The court has broad discretion to grant or deny motions to compel. *See Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 929 (4th Cir. 1995).

### A. Plaintiffs' Motion to Compel

Plaintiffs served interrogatories and requests for production on June 14, 2017. On July 28, Defendant responded and objected to several interrogatories and requests as overly broad,

unclear, unduly burdensome, privileged, or irrelevant. On July 31, Plaintiffs sent a letter to Defendant expressing concern about these responses. On September 2, Defendant sent a reply, providing some additional information but also maintaining its objections. Plaintiffs filed their motion to compel on September 14, Defendant replied on September 28, and Plaintiffs responded on October 3.[1]

### 1. Interrogatory 7

Plaintiffs' Interrogatory 7 states, "Furnish a detailed factual basis for each affirmative defense you assert in your Answer, including reference to any documents that support your defense." (Def.'s Resp. Opp'n Pls.' Mot. Compel, Ex. 2, Answer Pls.' Interrogs., Reqs. Produc. & Reqs. Admit, ECF No. 17-2, at 4.) Defendant responded, "MTB objects to this Interrogatory as overly broad and seeking privileged information and/or attorney work product." (*Id.*) The Court agrees that this initial response lacked the required specificity and also failed to include enough information for Plaintiffs or the Court to assess the claim of privilege, as required by Rule 26(b)(5)(A). However, Defendant's September 2 letter provided an additional page and a half of further explanation of each defense. The letter maintained the objection, but failed to provide any more information in support of the objection. It also argues that some facts in support of its defenses may not yet be known and states, "The facts will bear out as discovery progresses." (Def.'s Resp. Opp'n Pls.' Mot. Compel, Ex. 4, Sept. 2 Letter from Def. Counsel to Pls.' Counsel, ECF No. 17-4, at 2.) Plaintiffs contend that these updated responses still lack

---

1.     The Court notes that Defendant complains that Plaintiffs did not further consult with Defendant's counsel between receipt of the September 2 letter and filing their motion to compel. The Court finds that the correspondence between the parties demonstrates a good faith effort to resolve the discovery dispute, in satisfaction of Local Rule 7.02. However, the Court also finds that the parties likely could have resolved some of their disagreements and clarified both their requests and responses through more communication prior to filing. The Court will not hesitate to modify Local Rule 7.02 to require an in-person attempt to resolve future disputes if the parties continue to demonstrate a lack of effort in resolving their disagreements prior to filing.

sufficient detail. For example, in support of Defendant's *bona fide* error defense, they argue that it should be compelled to explain any procedures it had in place to prevent accounting errors.

The Court finds that Defendant has not provided enough specificity or followed the required procedures to properly assert a claim of privilege. Thus, to the extent that Defendant has withheld presently-known facts on that basis, it is ordered to provide those facts. Giving Defendant the benefit of the doubt, the Court interprets counsel's statement that "[t]he facts will bear out" as reiterating that some facts are not yet known, rather than an improper deflection of Plaintiffs' request. If Defendant has actually withheld information that it knows to be responsive to Plaintiffs' request, it must be provided. Specifically, Defendant is ordered to provide whatever it knows at this time about procedures related to the *bona fide* error defense, as Plaintiffs have requested. However, the Court agrees with Defendant that the September 2 letter did provide some facts in support of Defendant's defenses and the Court agrees that it is unclear what additional insufficiency Plaintiffs are claiming. While Defendant is ordered to provide known facts that were withheld on the basis of privilege, it is not required to guess what other facts Plaintiffs still request in response to this interrogatory. Plaintiffs will have ample opportunity to ask Defendant for more specifics as discovery progresses.

### 2. Interrogatories 9, 10, 12, and Request for Production 5

Plaintiffs move to compel responses to Interrogatories 9, 10, and 12, to which Defendant's response was, "MTB objects to this Interrogatory as overly broad, unclear, unduly burdensome and seeking information that is irrelevant and otherwise unlikely to lead to the discovery of admissible evidence." (Def.'s Resp. Opp'n Pls.' Mot. Compel, Ex. 2, Answer Pls.' Interrogs., Reqs. Produc. & Reqs. Admit, ECF No. 17-2, at 4–5.) Defendant also provided a

nearly verbatim response to Request for Production 5, though specified that request was "overly broad *in time and scope*." (*Id.*, at 6 (emphasis added).)

Interrogatory 9 asks Defendant to identify all people who have assisted Defendant with collecting homeowners' assessments since January 1, 2016. In its response, Defendant largely makes conclusory assertions that this claim is overly broad and unduly burdensome. It insists that it has identified everyone involved in the collection of Plaintiffs' assessment, but that it should not be required to identify those involved with the collections of other people's assessments because Plaintiffs have not yet established that Defendant is liable for anything. Of course, the point of discovery is to unearth information tending to show that a defendant is liable or not. Defendant cannot put the cart before the horse by insisting on some showing of liability before it will respond to discovery requests. If Defendant wished to bifurcate discovery in that manner, it should have asked to do so. Since it did not and since Plaintiffs bring this matter as a putative class action, identifying those involved with the collections of other people's assessments could enable Plaintiffs to learn information relevant to certifying their class, such as whether Defendant used the same procedures in all of its collections activities. Defendant has not met its burden of establishing that such information would be overly broad or unduly burdensome. *See Mainstreet*, 270 F.R.D. at 240. Defendant is ordered to respond.

Interrogatory 10 asks Defendant for the number of liens it has filed and right-to-cure letters it has sent as part of homeowners' assessment collections since January 1, 2016. In the September 2 letter, Defendant did not provide additional support for its objection, other than adding that Plaintiffs had not established liability. As stated above, this is insufficient. Defendant is ordered to respond.

Interrogatory 12 asks Defendant how many times, from January 1, 2016 through the present, has Defendant sent a homeowner a right-to-cure letter which stated an amount greater than the amount stated on the homeowner's association account statement. In the September 2 letter, Defendant's counsel stands by the objection and adds that this is "impossible to answer anyhow" given that Defendant does not have access to the account statements. Parties answering interrogatories have a duty to undertake reasonable investigative efforts to find requested information. *See Smithfield Bus. Park, LLC v. SLR Int'l Corp.*, No. 5:12-CV-00282-F, 2013 WL 5705601, at *4 (E.D.N.C. Oct. 18, 2013). If those efforts do not enable the answering party to give complete answers, the party "should so state under oath and should set forth in detail the efforts made to obtain the information." *Nat'l Fire Ins. Co. of Hartford v. Jose Trucking Corp.*, 264 F.R.D. 233, 238–39 (W.D.N.C. 2010) (citations omitted). Defendant is ordered to undertake reasonable investigative efforts to respond to the interrogatory and either answer the question, or explain why it cannot answer and the efforts made to obtain the information.

Request for Production 5 asks Defendant to produce all liens it has filed as part of homeowners' assessment collections between January 1, 2014, and June 13, 2017. In the September 2 letter, Defendant's counsel restated the objection and noted that the liens are available as a public record. In its response, Defendant states that this would require it to produce thousands of liens. Defendant has provided barely more specificity than a recitation that the request is burdensome. However, Plaintiffs stated reasons for the request are to determine the number of times such liens have been filed, the number of people whom Defendant has pursued in collections matters, the homeowners' associations for which Defendant does collections, and the property that has been encumbered. By stating that this request would include thousands of liens, Defendant has given Plaintiffs an idea of the number of times it has

filed such liens and roughly how many people have been pursued.  Plaintiffs have not established

why the specific properties encumbered are relevant, and it would be much less burdensome for

Defendant to simply tell Plaintiffs the homeowners' associations that employ it to do collections.

Request for Production 5 is modified to require Defendant to produce a representative sample of

50 liens filed between January 1, 2014, and June 13, 2017.  Defendant is ordered to tell Plaintiffs

which homeowners' associations have hired it to pursue collections over this time period, and

provide Plaintiffs with any information they may need to search public records for additional

liens filed during the time period.

### 3.   Request for Production 11

Plaintiffs' Request for Production 11 states, "Produce a copy of all statements you

created and sent to Plaintiff[s] or anyone else claiming that those statements represented

Plaintiffs' account with [the HOA]."  (Def.'s Resp. Opp'n Pls.' Mot. Compel, Ex. 2, Answer

Pls.' Interrogs., Reqs. Produc. & Reqs. Admit, ECF No. 17-2, at 7.)  Defendant objected that it

was confused by what Plaintiffs meant by "anyone else."  Plaintiffs' counsel did little to clarify

in a follow-up letter.  Plaintiffs' motion to compel shows two account statements: one from the

HOA website, and one created by Defendant.  Though the Court agrees that it was not perfectly

clear what Plaintiffs originally requested, Defendant did not aid matters through its equally

unclear objection.  The parties likely could have resolved the confusion without the aid of the

Court.  In any event, Plaintiffs' motion now makes clear that they meant to ask for all statements

sent to Plaintiffs or to other Charleston National homeowners ("anyone else") that reflect the

amount Defendant was seeking to collect, including its attorney fee—for example, the statement

Defendant created and sent to Plaintiffs (Pls.' Mot. Compel, Ex. 8, Statement Stephanie Trotter,

ECF No. 12-8, at 3.).  Plaintiffs' request did not include any specific time frame, and given that

Defendant has said it has filed thousands of collections liens in recent years, the Court finds that a limitation is appropriate. Defendant is ordered to produce all such Charleston National statements from January 1, 2017 through June 13, 2017.

### 4. Request for Production 12

Plaintiffs requested a copy of a letter which Defendant was unable to locate. Defendant stated it would continue to look for the letter and has not objected to the request. Defendant is ordered to continue to make a reasonable effort to locate the letter and to produce the letter as soon as it is located. If Defendant cannot produce the letter within 30 days from the issuance of this Order, it is ordered to inform Plaintiffs of the efforts it took to locate the letter.

### 5. Request for Production 20

Finally, Plaintiffs requested all attorney's fee agreements Defendant had with South Carolina homeowners' associations or community associations that were relied upon when sending right-to-cure letters from January 1, 2016, through the present. Defendant replied, "MTB objects as irrelevant, overly broad and seeking confidential, privileged material not subject to discovery." (Def.'s Resp. Opp'n Pls.' Mot. Compel, Ex. 2, Answer Pls.' Interrogs., Reqs. Produc. & Reqs. Admit, ECF No. 17-2, at 9.) Defendant's September 2 letter did not add any support for these objections. Defendant's response similarly adds no support for the objections, but instead argues that it is not liable and speculates that compliance with this request would cause it to lose clients. However, Defendant has produced its agreement with the HOA. If Defendant's clients have concerns about the disclosure of their fee agreements, they remain free to raise those concerns with the Court, but Defendant has not met its burden to establish any

of its objections. Defendant is ordered to produce the fee agreements, subject to any objections from its clients.[2]

### B. Defendant's Motion to Compel

Defendant served Plaintiffs with interrogatories, requests for production, and requests to admit, and Plaintiffs responded on August 28. Defendant's counsel sent a letter the next day asking for more information, but Plaintiffs did not provide more details. Following consultation with Plaintiffs' counsel, Defendant filed a motion to compel on September 19. Plaintiff responded on October 3, and Defendant replied on October 6.

### 1. Interrogatory 10 and Request to Admit 1

Defendant's Interrogatory 10 asked Plaintiffs, "On what date did you mail the check attached as Exhibit 2 to the Complaint?" (Def.'s Mot. Compel, Ex. 3, Pls.' Resp., ECF No. 14-3, at 7.) Plaintiffs' full answer was "Objection. Irrelevant." (*Id.*) Defendant also asked Plaintiffs to admit that they did not mail the check for their homeowners' assessment to the HOA until on or after April 24. Plaintiffs objected that this request was irrelevant since it did not relate to Plaintiffs' claim or any of Defendant's defenses. Plaintiffs' answer to Interrogatory 10 is plainly insufficient since it did not put forth any specifics about why the question was irrelevant. Plaintiffs' response to the request to admit is more complete, but incorrect. Plaintiffs' dispute is about the amount of money that they *currently* owed and whether Defendant misrepresented the amount *currently* owed. The date Plaintiffs mailed the check (to the best of their recollection) directly affects the amount they owed on a particular date. The parties will remain free to dispute whether the inclusion of attorney's fees in billing statements was ever appropriate, but the time when Plaintiffs' mailed the check is relevant to what they currently owed, and may also

---

2. Any objections from clients must include support. Fee agreements are not automatically subject to attorney-client privilege or work product protections, and may simply be considered "routine office records." *See Wilson v. MRO Corp.*, No.: 2:16-cv-05279, 2017 WL 660007, at *2 (S.D.W.V. Feb. 14, 2017).

be relevant to whether Defendant acted appropriately in filing a lien. The Court notes that Plaintiffs' response to the request to admit included "To the extent necessary, it is denied," (*Id.*, at 11), thus Plaintiffs may have already answered that request for admission to the best of their ability. In any event, Plaintiffs are ordered to provide a complete response to Interrogatory 10, and to supplement Request to Admit 1, if needed.

### 2. Interrogatory 3

Defendant asked Plaintiffs for an itemized statement of damages. Plaintiffs responded in part that they are claiming "the amount of money paid above and beyond what was owed in April of 2017." (*Id.*, at 5.) Defendant's August 29 letter sought clarification about what amount Plaintiffs agree was owed in April 2017, but Plaintiffs apparently refused to specify. While the Court recognizes that Plaintiffs' damages are not fully determined, particularly because they intend to pursue attorney's fees, the Court cannot determine why Plaintiffs refuse to specify what amount they agree was owed in April 2017. Plaintiffs are ordered to specify the amount they agree was owed, and thus are not disputing.

### 3. Interrogatory 7[3] and 9

Defendant's Interrogatory 7 states, "List your addresses for the last ten years." (*Id.*, at 6.) Plaintiffs objected that the request was irrelevant, but provided the addresses anyway. In the August 29 letter, Defendant asked for the dates Plaintiffs occupied each residence. This is not information that Defendant initially requested, so Plaintiffs are not ordered to provide it at this time. Defendant is free to request this information through future discovery, as relevant.

Interrogatory 9 asks when Plaintiffs moved into their house in Charleston National. Plaintiffs objected to the relevance of the question but answered, "Plaintiffs closed in December

---

3.     Defendant's brief refers to Interrogatory 4, but it is clear from its argument that it intended to refer to Interrogatory 7.

of 2016 and were working on the house on a daily or weekly basis and checked the mail at the house on a regular basis." (*Id.*, at 7.)  The Court finds Plaintiffs' answer likely meets Defendant's asserted reason for wanting the information (to determine whether and when Plaintiffs received notices).  Still, Plaintiffs have an obligation to respond to the interrogatory fully, or else object with specificity.  Plaintiffs did not fully answer the question or provide a specific, supported objection.  Plaintiffs are ordered to fully respond.

### 4. Request to Produce 12

Finally, Defendant requested "a copy of all governing documents you maintain apply to the property." (*Id.*, at 11.)  Plaintiff objected to the relevance of the request and also stated, "The defendant misrepresented the account of the Plaintiffs regardless of what any covenants may say." (*Id.*)  Plaintiffs' conclusory statement that Defendant misrepresented the amount due is not responsive to the request and does not provide support for their objection.  Plaintiffs are free to argue that the covenant presented by Defendant is not applicable, but they must still inform Defendant of what documents they believe govern their rights and obligations as members of the HOA, since those rights and obligations are the basis for this suit.  Plaintiffs are ordered to produce the documents requested.

### III. Expenses

Defendant asks for an award of attorney's fees it incurred in connection with its motion to compel.  Given both parties' lack of cooperation, the Court finds it would be unjust to award Defendant the expenses it incurred.  *See* Fed. R. Civ. P. 37(a)(5)(iii).

## CONCLUSION

Defendant's motion to quash is **DENIED**, but the Court hereby **QUASHES** the subpoena to Gold Crown, without prejudice to its renewal should Defendant fail to produce the documents requested within 30 days from the date of this order.

Plaintiffs' motion to compel is **GRANTED IN PART** and **DENIED IN PART**. Defendant's motion to compel is **GRANTED IN PART** and **DENIED IN PART.** The parties are ordered to comply as described above within 30 days.

**AND IT IS SO ORDERED.**

PATRICK MICHAEL DUFFY
United States District Judge

**December 12, 2017**
**Charleston, South Carolina**