IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Mills K. Allison and Caitlin M. Barca, a.k.a. Caitlin Barca Allison, | ) ) ) Civil Action No. 2:17-cv-1727-RMG |
| Plaintiff, | ) ) ) **ORDER AND OPINION** |
| v. | ) ) |
| McCabe Trotter & Beverly, P.C., | ) ) |
| Defendant. | ) ) ) |

This matter is before the Court on Defendant McCabe, Trotter & Beverly, P.C.'s ("MTB") motion for summary judgment (Dkt. No. 42). For the reasons set forth below, the Court grants the motion for summary judgment.

## I. Background

Plaintiffs Mills K. Alison and Caitlin M. Barca Allison (the "Allisons") live in Charleston National, a housing development. The development is subject to the Charleston National Community Association, a homeowners' association ("HOA") that charges annual assessments pursuant to the HOA's covenants and restrictions ("CRs"). (Dkt. No. 44 at 6.) The HOA employs Defendant MTB to represent it in the collection of assessments. (Dkt. No. 42-1 at 1.)

As owners in Charleston National, Plaintiffs are members of the HOA. (Dkt. No. 42 at 4.) The CRs further provide that the owners are obligated to pay annual assessments, interest, costs and reasonable attorneys' fees, all of which are a continuing lien on the land. (*Id.*) Most relevantly, the CRs detail what occurs if an owner fails to timely pay an assessment:

> Section 9. Effect of Non-Payment of Assessments; Remedies of the Association.
> Any assessment not paid within thirty (30) days after the due date shall bear interest from the due date at a rate of eighteen (18%) percent per annum. The Association may bring an action at law against the Owner personally obligated to pay the same or foreclose the lien against the property and such Owner shall be responsible for

all costs of collection, *including reasonable attorneys' fees and expenses incurred* whether before or after a suit for collection is brought.

(Dkt. No. 44-8 at 3.) (emphasis added). The CRs are enforced by the HOA through their property management company, Gold Crown Management ("Gold Crown"). (*Id.*)

On December 8, 2014, the HOA entered into an Attorney Employment Agreement ("fee agreement") with Defendant. (Dkt. No. 44 at 2; Dkt. No. 42-1 at 1.) The fee agreement makes clear that while Gold Crown manages the property, it is Defendant's job to pursue the "collection and foreclosure of liens and assessments." (Dkt. No. 42-1 at 1.) The fee agreement provides that actions to pursue unpaid assessments are handled "on a flat fee basis." (*Id.*) Upon instituting an action to recover unpaid assessments, including sending a letter to the owner and eventually filing a notice of lien, the fee agreement identifies two sets of fees. (*Id.* at 8.) First, Defendant charges the HOA a flat fee of $65. (*Id.* at 8.) Second, the fee agreement identifies $425 in "fees to Homeowner" which includes the $65 already paid by the HOA. (*Id.*) Defendant never generates an invoice for the remaining $360 of attorneys' fees unless and until it is collected from the homeowner. (*Id.* at 1.) The fee agreement itself is clear on this point: "The fees will not be invoiced until collected from the owner." (*Id.*) Therefore, under the payment regime in the fee agreement, the HOA never owes Defendant more than $65 out of pocket, and all of the HOA's costs are reimbursed upon collection from a Homeowner. (*Id.*; Dkt. No. 44 6 – 7.)

As of April 2017, Plaintiffs owed $431.32 in unpaid assessments and late fees. While prior statements had not reached Plaintiffs because their mailing address was incorrect in Gold Crown's system, it is undisputed that by April 4, 2017, Plaintiffs received a Statement of Account showing their outstanding amount. (Dkt. No. 34-12.) On April 12, 2017, Gold Crown sent a letter to Plaintiffs, informing them of their outstanding balance and stating that, "[i]f the payment has not been received after…ten (10) days, your account will be turned over to the Attorney for collection

and a lien will be filed against your property. If this happens, you will be fully responsible for paying all attorneys' fees." (Dkt. No. 34-13.) At some point after receiving this letter, Plaintiffs prepared and sent a check for $431.32, noting on the memo line that it was for "Dues up to May '17." (Dkt. No. 1-1 at 25.) The check was dated April 14, 2017. (*Id.*) While there is some dispute over exactly when the Plaintiffs mailed the check, Plaintiffs have not disputed that the check was sent after April 22, 2017, after the ten days required by Gold Crown's letter.[1]

On April 28, 2017, Gold Crown gave the file to Defendant to pursue collection of the assessments. (Dkt. No. 44 at 10.) On May 2, 2017, Defendant opened a file and filed a notice of lien for $906.32.[2] (Dkt. No. 1-1 at 27.) The $906.32 included the previously owed $431.32, a $50 administrative fee/collection cost, and $425 in legal fees from MTB. (*Id.*) Since the check dated April 14, 2017 arrived after Defendant had already added the $425 in legal fees, MTB returned the check to the Plaintiffs on May 3, 2017, with a letter reiterating that $906.32 was owed. (Dkt. No. 44 at 11.) Ultimately, on June 9, 2017, the Plaintiffs disputed the debt and asked Defendants to verify the amount. (Dkt. No. 44-11.) As of June 13, 2017, Defendants represented that Plaintiffs owed $918.70 based on newly incurred late fees. (Dkt. No. 44 at 14.) The Plaintiffs ultimately sent a check for $918.70 to Defendants on June 14, 2017. (Dkt. No. 44-13.) The HOA then paid Defendant's remaining $360 in attorneys' fees out of a trust account maintained by MTB. (Dkt. Nos. 42 at 17; 42-2 at 34.)

---

[1] Plaintiffs, in an email dated May 3, 2017, state that the check was mailed "last week." (Dkt. No. 34-15.) Plaintiffs, in their Memo merely argue that the Allisons sent the check "[p]rior to the end of April" (Dkt. No. 44 at 10.) Defendants allege that they did not learn of the check until May 3, 2017. (Dkt. No. 42-2 at 128.) Plaintiffs have presented no evidence disputing this fact.

[2] While there is a dispute over when the letter was sent informing Plaintiffs of the notice of lien, there is no dispute that the notice of lien was filed on May 2, 2017. (Dkt. No. 1-1 at 29.)

Plaintiffs allege that Defendant violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1601, by attempting to collect, and actually collecting, $425 in attorneys' fees, since the fees were never incurred and therefore were not owed. Plaintiffs also allege that Defendant violated the South Carolina Unfair Trade Practices Act ("SCUTPA"), S.C. Code Ann. § 39-5-10, *et seq.*, when attempting to collect the $425 in attorneys' fees.

## II. <u>Legal Standard[3]</u>

To prevail on a motion for summary judgment, the movant must demonstrate that there is no genuine issue of any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The party seeking summary judgment has the burden of identifying the portions of the "pleadings, depositions, answers to interrogatories, any admissions on file, together with the affidavits, if any, which show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Court will construe all inferences and ambiguities against the movant and in favor of the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The existence of a mere scintilla of evidence in support of the non-moving party's position is insufficient to withstand a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). However, an issue of material fact is genuine if the evidence is such that a reasonable jury could return a verdict in favor of the non-movant. *Id.* at 257.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "In the language of the Rule,

---

[3] Pursuant to Fed. R. Civ. P. 12(d), because both parties presented matters outside of the pleadings, the motion is treated as one for summary judgment.

the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 587. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

### III. <u>Discussion</u>

#### A. FDCPA

Plaintiffs argue that since the HOA will never pay more than $65 to the Defendants, $425 in attorneys' fees is never incurred under the terms of the CRs and therefore any attempt to collect $425 in attorneys' fees is a violation of the FDCPA. To make out a claim under the FDCPA, Plaintiffs must prove that:

(1) Plaintiffs have been the object of collection activity arising from consumer debt;

(2) Defendant is a debt collector as defined by the FDCPA, and;

(3) Defendant has engaged in an act or omission prohibited by the FDCPA

*See Chatman v. GC Servs., LP*, 57 F. Supp. 3d 560, 565 (D.S.C. 2014). In relevant part here, the FDCPA prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt," or from using "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C.A. § 1692(e); §1692(f). Courts must review whether a communication is misleading through the lens of the least sophisticated consumer, which is "an objective standard that evaluates § 1692e claims based upon how the least sophisticated consumer would interpret the allegedly offensive language." *Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 394–95 (4th Cir. 2014). Plaintiffs additionally allege that by including the attorneys' fees on the collection letters, Defendant stated an incorrect amount of debt, in violation of FDCPA §§ 1692(g) and (j).

Defendant does not contest that it sought to collect a debt and that it is a debt collector as defined by the FDCPA. (Dkt. No. 42 at 18.) The only question, therefore, is whether Defendant violated the FDCPA by stating that the Plaintiff's owed $425 in attorneys' fees.

To begin with, Plaintiffs allege that Defendant violated the FDCPA by filing a notice of lien and seeking to collect attorneys' fees before any court had determined that attorneys' fees were owed. Filing a notice of lien for outstanding debts is a recognized practice under South Carolina law. *See Erdogan v. Pres. at Charleston Park Homeowners Ass'n, Inc.*, No. 2:18-CV-00084-RMG, 2018 WL 3075825, at *3 (D.S.C. June 21, 2018) (collecting cases). Furthermore, while courts in the Fourth Circuit have yet to address the issue, other courts have recognized that a party does not violate the FDCPA simply by including attorneys' fees in a debt collection letter without a court order. *See Singer v. Pierce & Assocs.*, P.C., 383 F.3d 596, 598 (7th Cir. 2004) ("a debt collector may include attorney fees and collection costs in the dunning letter when the underlying contractual relationship between the debtor and creditor provided for the recovery of such fees and costs."); *Fields v. Wilber Law Firm, P.C.*, 383 F.3d 562, 565 (7th Cir. 2004) ("when a debtor has contractually agreed to pay attorneys' fees and collection costs, a debt collector may, without a court's permission, state those fees and costs and include that amount in the dunning letter."); *Murr v. Tarpon Fin. Corp.*, No. 3:10-CV-372, 2014 WL 546690, at *10 (E.D. Tenn. Feb. 10, 2014) (same) *citing Fields*, 383 F.3d at 565; *Bull v. Asset Acceptance, LLC*, 444 F. Supp. 2d 946, 950 (N.D. Ind. 2006) (same).

Nonetheless, while it is not an automatic violation of the FDCPA to state attorneys' fees without a court order, those fees must be authorized by the controlling contract. *See Id.* Section 9 of the CRs provide that an owner is responsible for "reasonable attorneys' fees and expenses incurred." Therefore, Defendant could only seek the $425 from Plaintiffs if the attorneys' fees

had been incurred at the time Defendant tried to collect the debt. Plaintiffs claim it was impossible for attorneys' fees to be incurred at that time because the HOA never pays more than $65 in advance, and Defendant does not receive the full $425 unless they actually recover the outstanding debts. (Dkt. No. 44 at 21.) Plaintiffs' argument is incorrect.

The $425 in attorneys' fees that Defendant sought to collect is structured as a contingency fee. However, while Defendant does not receive payment until recovery, under the fee agreements, the $425 in fees were incurred once the case was referred to MTB and they performed the required work. This view is supported by other district courts that have similarly held that law firms can seek to recover contingent attorneys' fees under the FDCPA. *See Murr v. Tarpon Fin. Corp.*, No. 3:10-CV-372, 2014 WL 546690, at *13 (E.D. Tenn. Feb. 10, 2014) (where debtor agreed to pay "attorneys' fees," court held that "[o]nce the debt is collected, [the attorney] is entitled to take his share. At that point, [the client] has paid the attorney's fee. Thus the percentage fee is an actual 'cost' incurred by [the client] in the collection of [the] debt and seeking to recoup that cost as agreed in the underlying contract was not a violation of the FDCPA."); *Kirscher v. Messerli & Kramer, P.A.*, No. CIV. 05-1901PAMRLE, 2006 WL 145162, at *6 (D. Minn. Jan. 18, 2006) (finding that attempt to collect attorneys' fees based on contingency where agreement provided for recovery of fees actually incurred did not violate FDCPA). Therefore it was not a violation for the Defendant here to attempt to collect the $425 in attorneys' fees, since the costs were incurred once the case was referred to Defendant and MTB performed the underlying work.

Furthermore, if Plaintiff were correct, Defendant would be required to send out a second letter to collect the $425 in attorneys' fees once MTB recovered the underlying debts. This structure, forcing Defendant to exclude the $425 while knowing that a second letter may be forthcoming, could be misleading and potentially a violation of the FDCPA. *See Sparks v.*

*EquityExperts.Org, LLC*, No. 17-11330, 2018 WL 3387245, at *3 (E.D. Mich. July 12, 2018) ("There is a good reason for allowing debt collectors to include those fees in the letters seeking to collect the underlying debt: failure to do so—resulting in subsequent letters seeking to collect the attorney fees and costs incurred when the original debt was being collected—could be misleading."); *Murr v. Tarpon Fin. Corp.*, No. 3:10-CV-372, 2014 WL 546690, at *12 (E.D. Tenn. Feb. 10, 2014) ("[s]uch a second round itself may violate the FDCPA, as the total amount of the debt must be reflected in the initial communication."). Furthermore, contingency fees are expressly allowed under the South Carolina Rules of Professional Conduct regarding fees, and it therefore strains credulity to argue that attorneys' fees are only incurred if they are fixed and invoiced. S.C. Rules of Prof. Conduct, Rule 1.5(c).

Plaintiffs' cited cases do not conflict with this conclusion, and merely stand for the proposition a debt collector cannot seek prospective or estimated attorneys' fees when the contract only allows for recovery of incurred fees,. In *Kaymark v. Bank of Am., N.A.*, 783 F.3d 168 (3d Cir. 2015) the court held that a law firm violated the FDCPA by including fees over two months before a foreclosure action was filed when the contract only allowed for recovery of fees for services actually performed. In *McLaughlin v. Phelan Hallinan & Schmieg, LLP*, 756 F.3d 240 (3d Cir. 2014), the defendant acknowledged that the attorneys' fees listed were estimates and did not accurately reflect work performed. In *Bradley v. Franklin Collection Serv., Inc.*, 739 F.3d 606 (11th Cir. 2014), the plaintiff had only agreed to "pay all costs of collection," and therefore the court held that a 33.33% collection fee charged before the defendant attempted to collect the debt was unrelated to the actual costs of collection. Finally, in *Genova v. IC Sys., Inc.*, No. CV 16-5621, 2017 WL 2289289 (D.N.J. May 25, 2017), a debt collector was not allowed to charge a 17% collection fee that was "untied to the costs of collection" where the contract only permitted

recovery of "any fees incurred." Here, there is no such issue of a prospective or estimated fee. There is no dispute that Defendants performed the work of sending out letters and filing a notice of lien, and those activities incur $425 in fees under the fee agreement.[4] (Dkt. No. 42-1 at 8.)

Finally, Plaintiffs argue that $425 in fees is not a "reasonable" amount, as required by the CRs, and the determination of reasonableness should be left to a jury. (Dkt. No. 44 at 28 – 31.) Multiple courts have rejected this argument. *See Bull v. Asset Acceptance*, LLC, 444 F. Supp. 2d 946, 951 (N.D. Ind. 2006) ("This court reads *Singer* and *Fields* to say that once a debtor…agrees to pay attorneys' fees in the event of default, he cannot use the FDCPA to contest the reasonableness of those fees, which is precisely what Plaintiff seeks to do in this case."); *McCarter v. Kovitz Shifrin Nesbit*, 6 F. Supp. 3d 797, 805 (N.D. Ill. 2013) ("The fact that the 1971 Declaration provides that reasonable attorneys' fees are to be 'fixed' by a court in the event of a suit to collect delinquent assessments or to foreclose on a lien did not prevent the Association from seeking to collect a specific amount of attorneys' fees and costs before filing suit."). Further, reviewing the factors laid out in *Blumberg v. Nealco, Inc.*, 310 S.C. 492, 427 S.E.2d 659 (1993), the Court finds that $425 is reasonable for the work performed by MTB. (Dkt. No. 42-2 at 172.)

As the Seventh Circuit articulated, and this Court finds persuasive, to legally collect attorneys' fees under the FDCPA, a defendant "ha[s] to specify an amount that it intended to charge (or had already charged) for its services" and a debtor must have "contractually agreed to pay attorneys' fees and collection costs...." *Fields v. Wilber Law Firm, P.C.*, 383 F.3d 562, 565 (7th Cir. 2004). The Defendant here meets that test. The fee agreement provided that the Defendant

---

[4] Plaintiffs also focus on the fact that homeowners are not a party to the fee agreement. (Dkt. No. 44 at 21.) However, this argument is misplaced. The fee agreement demonstrates the amount of fees Defendants incur at the initial stage of collecting a debt. The fact that Plaintiffs agreed to ultimately pay these incurred fees is contained in the CRs, to which the Plaintiffs are undisputedly bound. (Dkt. No. 44 at 6.)

would charge $425 for collection services up through filing a notice of lien and sending a letter. (Dkt. No. 42-1 at 8.) The CRs provide that those reasonable attorneys' fees incurred are the responsibility of an owner. (Dkt. No. 44-8 at 3.) Finally, the record evidence demonstrates that the HOA paid the Defendant the remaining $360 in fees once the Plaintiffs paid their outstanding balance of $918.70. (Dkt. Nos. 42 at 17; 42-2 at 34.) Therefore, there is no dispute that the CRs authorized the charging of reasonable attorneys' fees to Plaintiffs or that those fees were incurred once MTB performed the work and intended to ultimately charge for those services. Defendant is therefore entitled to summary judgment on Plaintiffs FDCPA claims.

**B. State Law Claims under SCUTPA**

To prevail under the SCUTPA, a plaintiff must show that:

(1) the defendant engaged in an unfair or deceptive act in the conduct of trade or commerce;

(2) the unfair or deceptive act affected public interest; and

(3) the plaintiff suffered monetary or property loss as a result of the defendant's unfair or deceptive act(s).

*Austin v. Stokes-Craven Holding Corp.*, 387 S.C. 22, 50, 691 S.E.2d 135, 149 (2010) *quoting Wright v. Craft*, 372 S.C. 1, 23, 640 S.E.2d 486, 498 (Ct.App.2006). To demonstrate an "unfair or deceptive act" under the SCUTPA, the plaintiff must show "at least a potential of deception." *Clarkson v. Orkin Exterminating Co.*, 761 F.2d 189, 191 (4th Cir. 1985). The SCUTPA exempts "those actions or transactions which are allowed or authorized by regulatory agencies or other statutes." *Ward v. Dick Dyer & Assocs., Inc.*, 304 S.C. 152, 155, 403 S.E.2d 310, 312 (1991).

Plaintiffs identify four acts by Defendant that allegedly violated the SCUTPA: first, sending a letter stating that any payment must first be applied to attorneys' fees; second, returning a check in order to generate attorneys' fees and costs; third, failing to credit $431.32 sent by check

to Plaintiffs' outstanding debt, and; fourth, filing a lien on Plaintiffs' property for the amount of the outstanding debt, attorneys' fees and costs. (Dkt. No. 1-1 at 21 – 22.)

The first three allegations all relate to the same underlying facts. These allegations fail since Plaintiff fails to create any dispute that Defendant acted in a way with a "potential for deception." While Plaintiffs do allege that they sent in the check prior to May 2, 2017, when the notice of lien was filed, they have failed to create any dispute that Defendant received the check before they performed the work incurring the fees, such as filing the lien on May 2, 2017. Defendant here validly performed the work that incurred the attorneys' fees before payment arrived, and therefore it was not deceptive to attempt to collect their incurred fees even if they later learned of the attempted payment. Indeed, the only evidence in the record regarding when Defendant learned of the check indicates that MTB received it on May 3, 2017, after the attorneys' fees were already incurred. (Dkt. No. 42-2 at 128.) Therefore, Plaintiffs have not demonstrated that Defendant's actions had any potential to deceive

Furthermore, Plaintiffs cannot make out a SCUTPA where there is no dispute that they sent in the check after the date they were informed attorneys' fees would be assessed. *See Clarkson v. Orkin Exterminating Co.*, 761 F.2d 189, 191 (4th Cir. 1985) (finding no violation of SCUTPA where plaintiff "knew the true state of affairs[.]"). It is undisputed that on April 12, 2017, Gold Crown sent a letter to Plaintiffs, informing them of their outstanding balance and stating that, after ten days, the account would be turned over to an attorney and "[i]f this happens, you will be fully responsible for paying all attorneys' fees." (Dkt. No. 34-13.) Plaintiffs have not disputed that the check was sent after April 22, 2017, the end of the ten days in the letter. There is also no indication of a dispute in the record that Plaintiffs believed they could pay after April 22, 2017 and avoid

attorneys' fees.[5] There therefore was no "potential for deception" when Defendant sent a letter and refused to accept a check purportedly paying for all "[d]ues up to May '17," when Plaintiffs had previously been informed that the fees would be assessed before they even sent the check.

Finally, Defendant did not unfairly or deceptively file a notice of lien that included attorneys' fees and costs. South Carolina law recognizes the right for liens to be imposed based on restrictive covenants. *See Erdogan v. Pres. at Charleston Park Homeowners Ass'n, Inc.*, No. 2:18-CV-00084-RMG, 2018 WL 3075825, at *3 (D.S.C. June 21, 2018) (collecting cases). Furthermore, Defendant could legally pursue attorneys' fees and costs from Plaintiffs under the FDCPA. Therefore, Defendant did not violate the SCUTPA by filing a valid notice of lien. Defendant is therefore entitled to summary judgment on Plaintiffs SCUTPA claims.

Because the Court grants summary judgment for the Defendant, it need not reach the pending motion to certify a class (Dkt. No. 31), motion to compel (Dkt. No. 32) or motion to amend/correct the scheduling order (Dkt. No. 57). Those motions are dismissed as moot.

## IV. Conclusion

For the foregoing reasons, the Court **GRANTS** Defendant's Motion to Summary Judgment (Dkt. No. 42.) All other pending motions are **DENIED AS MOOT**.

**AND IT IS SO ORDERED.**

Richard Mark Gergel
United States District Court Judge

August 9, 2018
Charleston, South Carolina

---

[5] Plaintiffs rely on a comment at the bottom of the invoice stating "LATE FEES AFTER 4-30-17." (Dkt. No. 34-12 at 3.) Yet, this document does not reference attorneys' fees, and instead discusses late fees, which is a monthly charge of $6.19 for every month in which payment is not made. (*Id.*) The only document in the record discussing when attorneys' fees would be assessed is the April 12, 2017 letter that provides for 10 days until fees are assessed. (Dkt. No. 34-13.)