IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Mills K. Allison and Caitlin M. Barca, a.k.a. Caitlin Barca Allison, | ) ) ) | Civil Action No. 2:17-cv-1727-RMG |
| Plaintiff, | ) ) ) | **ORDER AND OPINION** |
| v. | ) ) | |
| McCabe Trotter & Beverly, P.C., | ) ) | |
| Defendant. | ) ) | |

This matter is before the Court on Plaintiffs' motion for reconsideration (Dkt. No. 61). For the reasons set forth below, the Court grants in part and denies in part the motion.

**I.    Background**

Plaintiffs purchased a house in a development that is subject to the Charleston National Community Association, a homeowners' association ("HOA") that charges annual assessments. The HOA employs Defendant McCabe, Trotter & Beverly, P.C. ("MTB") to represent it in collections of assessments. Plaintiffs allege that MTB violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1601, by attempting to collect amounts not currently due on HOA accounts. Plaintiffs also allege that Defendant made misrepresentations in violation of the South Carolina Unfair Trade Practices Act ("SCUTPA"), S.C. Code Ann. § 39–5–10, et seq. The Court granted summary judgment in favor of Defendant on August 10, 2018. (Dkt. No. 58.) Plaintiffs now move for reconsideration, arguing that the Court exceeded its authority and there were errors of fact in the Court's order. (Dkt. Nos. 61, 64.) Defendant opposes the motion. (Dkt. No. 63.)

**II.   Legal Standard**

Rule 59(e) of the Federal Rules of Civil Procedure governs motions to alter or amend a judgment; however, the rule does not provide a legal standard for such motions. The Fourth Circuit

has articulated "three grounds for amending an earlier judgment: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998) *citing EEOC v. Lockheed Martin Corp.*, 116 F.3d 110, 112 (4th Cir. 1997); *Hutchinson v. Staton*, 994 F.2d 1076, 1081 (4th Cir. 1993). "Rule 59(e) motions may not be used, however, to raise arguments which could have been raised prior to the issuance of the judgment, nor may they be used to argue a case under a novel legal theory that the party had the ability to address in the first instance." *Id.* at 403 (internal citations omitted). Rule 59(e) provides an "extraordinary remedy that should be used sparingly." *Id.* (internal citation omitted). The decision to alter or amend a judgment is reviewed for an abuse of discretion. *Id.* at 402.

### III. Discussion

Plaintiffs do not argue that there has been any intervening change in controlling law or any new evidence that was not previously available. Instead, Plaintiffs solely argue that the Court's Order was a clear error of law and/or created a manifest injustice. (Dkt. No. 61 at 4.)

Plaintiffs first argue that the motion for summary judgment on all claims was not properly before the Court because the Defendant "limit[ed] the scope" of their motion and that the motion was to be construed solely as a motion to dismiss. (Dkt. No. 61 at 4, 15.) These arguments have no merit. Defendant's motion moved for summary judgment on all claims, and while the Court required Defendant to submit a brief regarding a motion to dismiss, the order in no way prevented Defendant from filing a motion for summary judgment, which they did. (Dkt. Nos. 41, 42.)

Plaintiffs further argue that the Court erred in finding that the HOA incurred $425 in legal fees and that $425 was an amount actually owed that MTB could seek to recover in a collection

letter.¹ Plaintiff's arguments attempt to relitigate issues that were raised and already decided by the Court in its summary judgment order. *See* Dkt. No. 58 at 6 – 8. The Court reiterates its holding that the $425 in fees were incurred once the case was referred to MTB and they performed the requisite work, and they were permitted to seek to recover these fees in collection letters. *See, e.g., Id.*; *Murr v. Tarpon Fin. Corp.*, No. 3:10-CV-372, 2014 WL 546690, at *13 (E.D. Tenn. Feb. 10, 2014) (holding that "[o]nce the debt is collected, [the attorney] is entitled to take his share. At that point, [the client] has paid the attorney's fee. Thus the percentage fee is an actual 'cost' incurred by [the client] in the collection of [the] debt and seeking to recoup that cost as agreed in the underlying contract was not a violation of the FDCPA.").

Plaintiffs next argue that the Court committed an error of law by finding that the $425 in legal fees were reasonable under *Blumberg*. Plaintiffs misconstrue the Court's holding. The Court did not need to analyze *Blumberg* to find that the FDCPA allowed MTB to list attorneys' fees in the collection letters. As the Court already held, multiple courts have rejected this argument. *See Fields v. Wilber Law Firm, P.C.*, 383 F.3d 562, 565 (7th Cir. 2004) ("when a debtor has contractually agreed to pay attorneys' fees and collection costs, a debt collector may, without a court's permission, state those fees and costs and include that amount in the dunning letter."); *Bull v. Asset Acceptance, LLC*, 444 F. Supp. 2d 946, 951 (N.D. Ind. 2006) ("This court reads *Singer* and *Fields* to say that once a debtor…agrees to pay attorneys' fees in the event of default, he cannot use the FDCPA to contest the reasonableness of those fees, which is precisely what Plaintiff seeks to do in this case."). *Blumberg*, instead, lists the factors a court must consider when deciding to award attorneys' fees, if allowed by statute or contract, in a lawsuit. However, a court order on

---

¹ The relevant covenants and restrictions here provided that "the Owner shall be responsible for all costs of collection, *including reasonable attorneys' fees and expenses incurred* whether before or after a suit for collection is brought." (Dkt. No. 44-8 at 3.) (emphasis added).

reasonableness is not required for a creditor to recover attorneys' fees under the FDCPA where a debtor, such as the Plaintiffs here, agreed to pay attorneys' fees. *See Id.* The Court, instead, intended to note even if the Court was required to review the attorneys' fees, the amount MTB charged for their services was reasonable under *Blumberg*.[2]

Plaintiffs also assign error to the Court's finding that "there is no dispute that the notice of lien was filed on May 2, 2017, and argues that this error creates a material dispute of fact regarding whether Plaintiffs paid their debt prior to when attorneys' fees were incurred. Plaintiffs are correct that the Court's order needs to be clarified, but the clarification does not affect the disposition of the case. The Court erroneously stated that that the Notice of Lien for $906.32, including $425 in attorneys' fees, was *filed* on May 2, 2017, while Defendants concede in their opposition to this motion that it was not recorded until May 10, 2017. (Dkt. No. 63 at 6.) Instead, there is no dispute in the record that the Defendants *prepared and signed* the Notice of Lien on May 2, 2017. (Dkt. No. 44-10.) The Notice of Lien is dated May 2, 2017, as supported by the signatures of Ms. Trotter and two witnesses, and the Notice of Lien is notarized with the date of May 2, 2017, handwritten on the form. (*Id.*) Therefore, to clarify the Court's order, Dkt. No. 58:

1) On the second sentence in the first full paragraph on page three, the Court's order shall read that "Defendant opened a file and prepared and signed a notice of lien for $906.32."

---

[2] Stephanie Trotter, a member of MTB and the lawyer who filed the Notice of Lien, testified that to prepare, mail in and record the notice of line, MTB: opened a file in two different software, pulled a property card from the county, conducted a search regarding the property, conducted a conflict check, entered information regarding the debt and debtors, and prepared and signed the notice of lien. (Dkt. No. 42-2 at 172: 13 – 23.) Under the six factors in *Blumberg v. Nealco, Inc.*, 310 S.C. 492, 494 (1993), the extent and difficulty of the legal services rendered engaged multiple different individuals and services in MTB, and were commensurate with a flat fee of $425. MTB did not keep detailed hourly records, but Ms. Trotter's practice focuses on representing HOAs and therefore she has experience in the field. The compensation was a contingency basis, and Ms. Trotter testified that some other attorneys charge up to $500 to file a notice lien. (Dkt. No. 42-2 at 46:9 – 11.) Furthermore, payment was based on beneficial results for the client. Therefore, the Court notes that the fees could be found reasonable.

2) In Footnote 2, on page 3, the sentence should end, "there is no dispute that the notice of lien was prepared and signed on May 2, 2017."

This clarification, however, does not affect the Court's grant of summary judgment. Plaintiffs' motion argues that because there is dispute when a letter regarding the Notice of Lien was sent to Plaintiff, that "proves MTB filed the Notice of Lien against the Allisons' home after payment was mailed...." (Dkt. No. 61 at 6.) This argument, however, has no merit. Regardless of when the letter was mailed, the operative date is when MTB performed legal work to file the notice of lien and incurred attorneys' fees. Plaintiffs do not dispute that the check was sent after April 22, 2017, after the ten days required by Gold Grown, the management company, to avoid additional fees. (Dkt. Nos. 34-13; 44 at 10.) There is no dispute that Gold Crown, the management company, gave the file to Defendant to pursue assessments on April 28, 2017. (Dkt. No. 44 at 10.) There is no dispute that the Notice of Lien was prepared and signed on May 2, 2017. Plaintiffs have further presented no evidence that Defendants learned of the check before May 3, 2017. (Dkt. No. 42-2 at 128.) Instead, Plaintiff's argue over when Defendant sent a letter informing the Plaintiffs of the Notice of Lien, yet the fees were already incurred by May 2, 2017, and Defendant was therefore entitled to include them in the Notice of Lien and the subsequent letter. Therefore, the clarification regarding when the Notice of Lien was prepared and signed does not affect summary judgment.

Finally, Plaintiffs attempt to relitigate their claims under the SCUTPA by arguing that a variety of actions had a "potential of deception," as required under the law. However, the arguments advanced by Plaintiff were either already disposed of by this Court or are new arguments not appropriate on a motion to reconsideration. Furthermore, Plaintiff's new arguments simply re-allege the facts underlying their unsuccessful FDCPA claims in the guise of a SCUPTA claim and the Court already disposed of each of these arguments in both its Order on Summary Judgment and now this order.

## IV. Conclusion

For the foregoing reasons, The Court **GRANTS IN PART AND DENIES IN PART** Plaintiff's motion to reconsider (Dkt. No. 61). The Court **GRANTS** Plaintiff's motion to reconsider only insofar as to clarify that Defendant opened a file, prepared and signed a Notice of Lien on May 2, 2017, while the Notice of Lien was not recorded until May 10, 2017. (Dkt. No. 58 at 3, 3 n.2.) The motion to reconsider is otherwise **DENIED**.

**AND IT IS SO ORDERED.**

Richard Mark Gergel
United States District Court Judge

October 22, 2018
Charleston, South Carolina